# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DALE W. BIRCH,**

    **Plaintiff,**

    **v.**                                   **Case No. 2:19-CV-2156-JAR**

**CITY OF ATCHISON, KANSAS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

This matter arises out of incidents that led to the January 8, 2019 arrest and resulting conviction of Plaintiff Dale W. Birch, who proceeds *pro se*. Plaintiff claims that, during the course of his arrest and prosecution, several Atchison Police Department officers violated his civil rights, committed perjury, slander, libel and defamation, and caused him emotional distress. Plaintiff names the City of Atchison, the Atchison Police Department, Chief of Police Michael Wilson, and Officers Kurtis Page, Josh Sinclair, Adam Bush, Matt Stout, and Alex Moore as defendants in this action.

Before the Court is Defendants' Motion for Summary Judgment (Doc. 36) and Motion for Leave to file Sur-sur-reply (Doc. 45) to Plaintiff's sur-reply.[1] Under D. Kan. Rules 7.1 and 15.1(a), sur-replies are not permitted without leave of court, which Plaintiff did not obtain.[2] Thus, Defendants' motion to file a sur-sur-reply is **denied** because the Court does not consider

---

[1] Doc. 44.

[2] D. Kan. Rule 7.1 permits motions, responses, and replies as a matter of right. D. Kan. Rule 15.1(a) provides that "[a] party filing . . . a motion for leave to file a pleading or other document that may not be filed as a matter of right" to "(1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6."

Plaintiff's sur-reply to which Defendants seek to respond.  For the reasons discussed in detail below, Defendants' motion for summary judgment is **granted**.

## I.       Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6]  The facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[7]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[8]

Summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every

---

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[8] Fed. R. Civ. P. 56(c)(4).

action."[9]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[10]

The Court is mindful here of Plaintiff's *pro se* status.  A *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard than pleadings by represented parties.[11]  However, the Court does not become an advocate for the *pro se* litigant, and "will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[12]  Moreover, a *pro se* litigant is not excused from compliance with fundamental rules of procedure.[13]  *Pro se* litigants must follow rules of procedure, including local rules.[14]  "Plaintiff's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment."[15]

## II.    Uncontroverted Facts

D. Kan. Rule 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  Because Plaintiff did not specifically controvert any of Defendants' factual assertions as required by D. Kan. Rule 56.1(b)(1) or offer his own statement of additional facts as permitted by D. Kan. Rule 56.1(b)(2), but instead stated

---

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[10] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[13] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994), *cert. denied*, 513 U.S. 1090 (1995).

[14] *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992), *cert. denied,* 507 U.S. 940 (1993); *Campbell v. Meredith Corp.,* 260 F. Supp. 2d 1087, 1097 n.10 (D. Kan. 2003).

[15] *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006) (citing *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

3

"I do not want to agree to any of it at all,"[16] the Court accepts Defendants' factual assertions as uncontroverted to the extent that they are supported by the record.[17]  The following facts are deemed uncontroverted.

**Plaintiff's Arrest, Charges and Conviction**

Early on the morning of January 8, 2019, while still dark, uniformed officers Sinclair and Page responded to separate calls reporting a prowler pounding on the door of a residence and trying to gain entrance.  Uniformed officer Stout soon responded to a similar call.  Officers responded to investigate an alleged felony aggravated burglary.  As Sinclair approached the front porch of the residence, he saw Plaintiff standing on the porch.  Sinclair announced that he was an officer and asked Plaintiff what was going on.  Plaintiff did not respond.  Instead, Plaintiff fled, prompting Sinclair to communicate to officers that an unknown male had run around the back of the house and then headed northeast.  Sinclair and Page gave chase.  Sinclair observed no other person on the property.

During the chase route over several streets, Plaintiff slipped and fell in the mud at one point, losing his backpack and other belongings.  Several times officer Page yelled "stop, police," ordered Plaintiff to the ground and warned Plaintiff that he would be Tased.  Plaintiff did not stop.  Page deployed his Taser on Plaintiff.  Although Plaintiff fell to the ground, he got up again and continued running.  When Plaintiff again slipped and fell, Page approached Plaintiff and Plaintiff kicked him in the leg.  When Page then tried to grab Plaintiff's wrist, Plaintiff

---

[16] Doc. 42 at 2.

[17] The Court does not consider Defendants' factual assertions regarding Atchison Police Chief Mike Wilson because they are not supported by the record.  Defendants cite portions of the trial transcript for these factual assertions but omit the corresponding portions of the transcript from pages 436 to 462.  Trial Tr., Doc. 36-2 at 346–47.

punched Page.  Plaintiff continued to resist as Page and Sinclair and Stout successfully handcuffed Plaintiff.  Officers had to apply a second set of handcuffs because the first set of handcuffs were impacted with mud.  By the time they successfully handcuffed him, Plaintiff was no longer wearing pants, socks or shoes.

After Plaintiff was handcuffed, Sinclair checked Plaintiff for injuries and Taser probes, finding one Taser probe in Plaintiff's right buttock and one on the left side of Plaintiff's shorts. Sinclair also noticed scrapes on Plaintiff's knees.  Sinclair did not see any injury to Plaintiff's ear nor any active bleeding. Nor did Stout or Page.

While Sinclair was doing the injury check, Page recovered the backpack that Plaintiff had dropped in the street during the foot chase.  Officers later inventoried the contents of the backpack, which included a small pipe; lab tests confirmed that the pipe contained tetrahydrocannabinol.

While Page was recovering the backpack, and before Sinclair could complete the injury check, Plaintiff spun away from Sinclair and started running away again, while handcuffed with his hands behind his back.  Sinclair gave chase and regained control of Plaintiff with Stout's help.  Sinclair testified that he used the minimum amount of force necessary to apprehend Plaintiff.  Neither Sinclair nor any officer ground or slammed Plaintiff's head into the ground. Page did not punch or kick Plaintiff and did not strike Plaintiff's face; and Page did not see any other officer strike Plaintiff.  Officer Bush did not touch Plaintiff but got within a couple feet of him at the scene.  Bush did not see any injuries on Plaintiff.

On the scene of the incident, Plaintiff complained that his wrist hurt from the handcuffs. Plaintiff repeatedly complained that his knees hurt, after being handcuffed, before running away in handcuffs, and again after he was caught.  Plaintiff did not complain of injuries to his ear.

In about five minutes, Officer Moore arrived with a caged patrol car that transported Plaintiff to jail.  During the transport, Plaintiff complained that his legs were bothering him; and Plaintiff beat his head against the inside of the caged patrol vehicle window.  Moore pulled over, asked Plaintiff to stop, and he complied.  Moore continued to drive to the county jail.  There was no blood in the transport vehicle after Plaintiff was taken to jail.

When Plaintiff arrived at the Atchison County jail at 7:30 a.m. Deputy Sheriff Thomas noticed an injury to Plaintiff's ear, which Thomas described as a "pretty deep scratch."[18] Thomas saw no blood on Plaintiff's shirt and no active bleeding; the blood on his lower ear was dried and the cut was congealed.  Thomas accompanied Plaintiff to the emergency room, arriving between 7:35 and 7:40 a.m.  Plaintiff received 50 to 70 stitches in his left ear and was given pain medication while the sutures were made.  Plaintiff had multiple bruises, scrapes, and scratches all over his body.  Plaintiff also received a CT scan to screen for a concussion.

Plaintiff was charged with six counts: Interference With a Law Enforcement Officer, Battery Against a Law Enforcement Officer, Attempted Criminal Trespass, Criminal Damage to Property, Possession of a Controlled Substance, and Possession of Drug Paraphernalia.  The jury convicted him of all six counts.  Plaintiff's conviction is on appeal.[19]

**Plaintiff's Deposition Testimony**

Plaintiff was deposed in the present action prior to Defendants' motion for summary judgment, and Defendants set forth Plaintiff's version of the events in question in their statement of facts.  Not all officers named as defendants are included in Plaintiff's account, and Plaintiff describes an encounter with another officer who is not named as a defendant.  In fact, although

---

[18] *Id.* at 325:21–22.

[19] Doc. 36-11 at 2.

Police Chief Michael Wilson is named as a defendant in an unspecified capacity, Plaintiff mentions him nowhere else in his Complaint or deposition.  Thus, although the Court notes that Plaintiff's testimony contains internal inconsistencies and inconsistencies with the above-stated, uncontroverted facts, what follows is his recitations of the events on January 8, 2019.

Plaintiff left the residence around 5:00 or 5:30 a.m., walked to his uncle's house a few blocks away to access his uncle's Wi-Fi, before returning to the residence about 60 or 90 minutes later.  As Plaintiff walked back to the residence, he saw a man standing on the porch; the man was wearing a black hoodie like Plaintiff's hoodie.  When the two saw each other, the other man said, "tell Katie that Wayne came by,"[20] then turned and walked off the porch.  Plaintiff saw broken wood on the door to the house.  The white male ducked behind a fence between houses facing Laramie Street on the north side of the alley.  When Plaintiff tried to cut off the man on the other side of the fence on Laramie Street, Plaintiff slipped and fell in the wet grass on the west side of the fence.  Plaintiff saw the man go to the east side of the wooden fence, which is where the man was when Plaintiff was apprehended on the opposite side.

Plaintiff testified that after he fell, he turned and saw someone wearing a badge standing behind him.  Plaintiff claims that this officer was Garrett Loroff, whom he knew from an earlier case in municipal court.  Plaintiff said, "he's just on the other side of this fence right here . . . if you're looking for the guy, [] he's just on the other side of the fence."[21]  Plaintiff testified that Loroff did not respond, but handcuffed him, brought him to his knees, and punched him three times in the face.  Plaintiff testified that he asked Loroff, "what the fuck are you hitting me

_____

[20] Birch Dep., Doc. 36-1 at 25:4.

[21] *Id.* at 28:12–15.

for?"[22]  Plaintiff testified that he knew at the time that he was being handcuffed by a police

officer.

Next, Sinclair came to stand on Plaintiff's left side.  After receiving Loroff's punches,

Plaintiff ran from the officers to Laramie Street, then fell down.  After Plaintiff fell, he saw a

sparking wire coming from his pants and felt himself getting shocked in his "private and [] upper

thigh area."[23]  However, Plaintiff also testified that one of the Taser wires broke, and that neither

of the two Taser probes penetrated his skin.[24]  Plaintiff turned on his back and kicked off his

pants, and his shoes fell off.

Plaintiff admits resisting when Sinclair and Stout held him down after he attempted to

flee in handcuffs but contends that an officer was grinding his head into the sidewalk and that

Sinclair was using his left hand to grasp Plaintiff's throat.  Plaintiff testified that Sinclair was

"trying to crush [his] larynx."[25]  Plaintiff also testified that he has no memory of the period of

time when he and Page struggled on the north side of Laramie Street.

Plaintiff testified that when he was in the police car on the way to jail, he kicked the car's

window but did not cause any damage.  Plaintiff does not know how the injury to his ear

occurred.  He identified Loroff, Sinclair, and possibly Page as the only officers who came into

contact with him on January 8, 2019.

---

[22] *Id.* at 33:15–16.

[23] *Id.* at 40:20.

[24] *Id.* at 42:10–12.

[25] *Id.* at 57:13–14.

### III.    Discussion

In his Complaint, Plaintiff alleges that Defendants committed "Police Brutality," "Accessive [sic] Use of Force," "Harassment," "Deliberate indifference," "Perjury," "Slander/libel/Defamation," "Pain & Suffering," and "Mental Anguish & Emotional distress."[26] Plaintiff alleges injury to his ear, head, back, ribs, legs, and larynx.  The Court construes Plaintiff's allegations as claims under 42 U.S.C. § 1983 for violations of his constitutional rights.

Specifically, the Court construes Plaintiff's claims of police brutality, excessive use of force, and harassment as claims of unreasonable seizure due to the use of excessive force in violation of the Fourth Amendment.  The Court construes Plaintiff's claims of perjury, slander, libel, and defamation as claims for malicious prosecution under the Fourteenth Amendment and false arrest under the Fourth Amendment.  The Court construes Plaintiff's claim of deliberate indifference as failure to provide Plaintiff with medical treatment in violation of the Fourteenth Amendment.  Finally, the Court construes Plaintiff's allegations of pain, suffering, mental anguish, and emotional distress as the measure of damages Plaintiff seeks rather than independent claims.  Out of an abundance of caution, the Court also construes Plaintiff's claims of police brutality, excessive use of force, perjury, slander, libel, and defamation as potential claims arising under state tort law.

Defendants move for summary judgment on all of Plaintiff's claims on the following grounds: (1) the Atchison Police Department is not an entity amenable to suit; (2) insufficiency of process and insufficient service of process as to the Atchison Police Department; (3) none of Plaintiff's constitutional rights were violated; (4) the officers are entitled to qualified immunity

---

[26] Doc. 1-1 at 2.

from Plaintiff's constitutional claims; (5) there is no basis for municipal liability against the City

of Atchison; and (6) lack of subject-matter jurisdiction over Plaintiff's state-law claims.

### A.      Claims Against Atchison Police Department

Plaintiff's claims against the Atchison Police Department must be dismissed because the

Department is not an agency amenable to suit.  Under Fed. R. Civ. P. 17(b), the capacity of a

party to be sued in federal court is determined by the law of the state where the court is located.[27]

Kansas courts have held that "[s]ubordinate government agencies, in the absence of statutory

authorization, ordinarily do not have the capacity to sue or be sued."[28]  While the statutory

authority need not explicitly authorize the capacity to sue or be sued, the statute should grant

some power to the agency so that it has an implied capacity.[29]  "For example, conferring power

on a subordinate government agency to own or control property would have no meaning if the

agency could not vindicate its rights in the property by suing in a court of law."[30]

Here, there is no authority granting the Atchison Police Department the capacity to sue or

be sued and, under Kansas law, courts have found that police departments lack such capacity.[31]

---

[27] Fed. R. Civ. P. 17(b).

[28] *Mashaney v. Bd. of Indigents' Def. Serv.*, 355 P.3d 667, 672 (Kan. 2015) (quoting *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994)).

[29] *Lowery v. Cty. of Riley*, No. 04-3101-JTM, 2005 WL 1242376, at *7 (D. Kan. May 25, 2005) (citing Syl. ¶ 10, *Lindenman*, 875 P.2d 964; *Bd. of Library Dirs. v. City of Fort Scott*, 7 P.2d 533, 535 (Kan. 1932)).

[30] *Id.*

[31] *See, e.g., Brodzki v. Topeka Police Dep't*, 437 F. App'x 641, 641 (10th Cir. 2011) (affirming a District of Kansas court's finding that police department lacked capacity to sue and be sued under Kansas law); *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding the Kansas Highway Patrol did not have capacity to sue or be sued); *Neighbors v. Lawrence Police Dep't*, No. 15-CV-4921-DDC, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016) (dismissing the Lawrence Police Department because it is well established in Kansas that police departments are not a governmental entity subject to suit); *Pfuetze v. Kansas*, No. 10-1139-CM-GLR, 2010 WL 3892243, at *5 (D. Kan. Sept. 29, 2010) (finding no Kansas statute gave the Wichita Police Department the capacity to sue or be sued); *Whayne v. Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (concluding Topeka Police Department is "only a subunit of city government and, therefore, is not a governmental entity subject to suit").

There is also no statutory power that would imply capacity to sue or be sued.  Thus, the Court must dismiss Plaintiff's claims against the Atchison Police Department.  Because the Court finds that the Atchison Police Department does not have the capacity to be sued, it need not reach Defendants' arguments regarding insufficient process and insufficient service of process under Fed. R. Civ. P. 12(b)(4) and (5).

### B.    Section 1983 Claims Against Remaining Defendants

Pursuant to § 1983, any person who "under color of … [law] … subjects, or causes to be subjected, … any [person] … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 does not create any substantive rights.[32]  Rather, § 1983 provides only a right of action to remedy a violation of a right secured by the Constitution or laws of the United States.[33]

As a preliminary matter, Plaintiff's allegations are unclear as to which individual defendants he contends committed which constitutional violations.  In the context of a motion to dismiss, the Tenth Circuit found that "[b]efore a court may undertake the proper analysis, the complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason."[34]  It is problematic, therefore, that at the summary judgment stage, Plaintiff cannot point to the specific officers that he claims violated his constitutional rights.  Similarly, it is unclear whether and to what extent Plaintiff alleges his various claims against the City of

---

[32] *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

[33] *Id.*; *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).

[34] *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

Atchison, the Atchison Police Department, or Atchison Police officers in their individual or official capacities.  Out of an abundance of caution, the Court will analyze all of Plaintiff's potential remaining claims under § 1983.

As an additional preliminary matter, Plaintiff's conviction estops him from making certain factual claims in this civil suit.  Specifically, Plaintiff's conviction precludes him from arguing that another person attempted to break into the house or contesting that he fled from officers and battered Page, because such a finding would contravene his valid conviction and sentence.  To recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff seeking damages under § 1983 must prove that the conviction or sentence was previously invalidated.[35]  Thus, in § 1983 actions, courts must evaluate whether a judgment for the plaintiff implies the invalidity of his sentence.[36]  If it does, and if the conviction or sentence has not been invalidated, the plaintiff's complaint must be dismissed.[37]  Thus, Plaintiff's arguments are rejected to the extent they would imply the invalidity of his conviction.  With these preliminary matters in mind, the Court turns to Plaintiff's claims.

### 1.    Claims Against Officers

Again, Plaintiff does not specify whether he is suing the officers in their official or individual capacity.  To the extent Plaintiff makes claims against Atchison Police officers in their individual capacity, Defendants raise the defense of qualified immunity.  Under § 1983, a suit against a government official may be made to impose individual liability for actions taken under

---

[35] *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994).

[36] *Id.* at 487.

[37] *Id.*

the color of state law.[38]  In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[39]  A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[40]

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[41]  To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows that the official violated a federal statutory or constitutional right, and that the right the official violated was "clearly established" at the time of the challenged conduct.[42]

Qualified immunity is a defense that must be pleaded by the defendant,[43] but once the defendant raises it, the burden is on the plaintiff to "(1) com[e] forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrat[e] that the right violated was clearly established at the time of the conduct at issue."[44] Unless the plaintiff provides specific, non-conclusory allegations of fact sufficient to establish

---

[38] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[39] *Id.*

[40] *Id.*

[41] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[42] *Id.* at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000) (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)).

[43] *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c)).

[44] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998)); *see also Libretti v. Courtney*, 633 F. App'x 698, 699 (10th Cir. 2016).

these elements, the official is entitled to qualified immunity.[45]  Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[46]

Because the Court finds that Plaintiff is unable to show that any officer caused a constitutional deprivation, as discussed in detail below, the Court need not proceed to determine if qualified immunity shields the Defendant officers from suit under the second prong of the analysis.  Further, when a plaintiff sues a government employee in his or her official rather than individual capacity under § 1983, the plaintiff pleads an action against the government employer.[47]  Thus, the Court's finding that no Atchison police officer violated Plaintiff's constitutional rights likewise precludes a finding that City of Atchison is liable for a constitutional violation.[48]

### a. Excessive Force

The Court construes Plaintiff's allegations of police brutality, excessive force, and harassment as a claim of unreasonable seizure due to the use of excessive force in violation of the Fourth Amendment.[49]

---

[45] *See al-Kidd*, 563 U.S. at 735 (2011).

[46] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[47] *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978).

[48] *Id.*  Further, because official-capacity suits are treated as suits against the entity, Plaintiff's claims against the officers in their official capacity, if any, are duplicative of claims against the City alleging the same violations. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Monell*, 436 U.S. at 691 n.55; *Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 470 F. Supp. 2d 1237, 1255 (D. Kan. 2007).

[49] *See Cty. of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1547 (2017).  "An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances.  It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry." *Id.*  "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."  *Graham v. Connor*, 490 U.S. 386, 394 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001).

As discussed above, Plaintiff's allegations are unclear as to which Defendants he argues committed which constitutional violations.  Plaintiff argues that Loroff punched him in the face, but Loroff was never at the crime scene and is not a named defendant in this case.  Plaintiff elsewhere alleges that Atchison police officers punched him in the face multiple times without identifying a specific officer.  Plaintiff makes no allegation of any physical contact between himself and Defendants Wilson, Bush, and Moore.  However, since the uncontroverted facts do show physical contact between Plaintiff and Officers Sinclair, Page, and Stout, the Court proceeds to analyze whether those interactions violated the Fourth Amendment based on use of excessive force.

To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable."[50]  Courts determine whether the actions were objectively reasonable in light of the surrounding facts and circumstances, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the defendant actively resisted arrest or attempted to evade arrest by flight.[51]  In analyzing the surrounding facts and circumstances, courts must judge the officer's actions from the perspective of a reasonable officer on the scene, who is often forced to make split-second judgments about the amount of force that is necessary under the particular circumstances.[52]  "The court cannot, in the serenity of

---

[50] *Bower v. Cty. of Inyo*, 489 U.S. 593, 596–99 (1989).

[51] *Connor*, 490 U.S. at 396.

[52] *Id*. at 396–97.

15

its chambers, apply 20/20 hindsight in determining the reasonableness of the defendants' actions."[53]

"[T]he Fourth Amendment 'does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones.'"[54]   Additionally, "to successfully state an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible."[55]   "And 'where there are no disputed questions of historical fact . . . such as on summary judgment,' the court 'make[s] the . . . determination [of reasonable suspicion, probable cause, or excessive force] on its own' as a question of law."[56]

A balance of the surrounding facts and circumstances shows some use of force was objectively reasonable to effectuate Plaintiff's arrest.   Plaintiff's conviction conclusively established that he actively resisted arrest; he made multiple attempts to flee from officers placing him under arrest and even attempted to escape after he was placed in handcuffs.   Plaintiff was also a threat to the safety of officers; Plaintiff's conviction conclusively establishes that Plaintiff battered Page during the course of his arrest.   Finally, the officers were called to the scene to investigate Plaintiff for a serious crime: felony aggravated burglary.

Under these circumstances, each officer's physical contact with Plaintiff was reasonable to obtain or retain custody of Plaintiff.[57]   It was reasonable for Page to discharge a Taser on

---

[53] *Pride v. Kan. Highway Patrol*, 793 F. Supp. 279, 281 (D. Kan. 1992).

[54] *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)).

[55] *Pride*, 793 F. Supp. at 281 (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992)).

[56] *Donahue v. Wihong*, 948 F.3d 1177, 1187 (10th Cir. 2020) (quoting *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013)).

[57] *See Youbyoung Park v. Gaitan*, 680 F. App'x 724, 740 (10th Cir. 2017) (finding no excessive force when an officer struck plaintiff in the torso with his knee, put him in a face-down stabilization position and handcuffed

Plaintiff to stop him from fleeing in order to detain him.[58]  Plaintiff had an opportunity to comply with Page's orders before he was Tased; Page deployed the Taser only after Plaintiff ignored officers' repeated orders to stop running and a warning that the Taser would be discharged if he did not halt.  It was reasonable for Page to grab Plaintiff's wrist to control him after Plaintiff kicked Page.  It was also reasonable for Page to "chop" underneath Plaintiff to prevent him from escaping arrest upon his active resistance, especially given that Plaintiff punched Page in the ribs.  And, it was reasonable for Stout and Sinclair to hold down Plaintiff's arms and legs to prevent Plaintiff from escaping arrest a second time.

That Plaintiff punched and kicked Page could lead the other officers to reasonably believe they would also be harmed if they did not use some measure of force to control Plaintiff while he resisted arrest.  Officers used only the amount of force necessary to regain control of Plaintiff when he attempted to flee, and to hold him down to prevent him from fleeing again.  Finally, the officers only handcuffed Plaintiff once; the first pair of handcuffs officers tried to apply to Plaintiff failed because they were impacted with mud, so a second pair was successfully placed on him.[59]

Further, Plaintiff has not established that he suffered a significant injury or that any officer's actions were reprehensible.  Although Plaintiff testified that he felt a Taser shock, he

---

him after plaintiff resisted arrest by tensing his arms, bracing his legs, and pulling away from officers, but did not attempt to strike or otherwise fight officers); *Borneman v. Rozier*, 398 F. App'x 415, 418–19 (10th Cir. 2010) (finding no excessive force where officers struggled with plaintiff to subdue him, and after handcuffing plaintiff, placed a knee in plaintiff's back "apparently preparatory to raising him to a standing position").

[58] *See Counce v. Wolting*, 760 F. App'x 575, 581 (10th Cir. 2019) ("The troopers did not use excessive force under the circumstances (even by using a Taser)."); *Hunter v. Young*, 238 F. App'x 336, 339 (10th Cir. 2007) (finding use of a Taser objectively reasonable when prisoner failed to heed officer's orders to return to his bunk).

[59] *See Donahue*, 948 F.3d at 1197 (finding no excessive force due to handcuffing when reasonable juror could not conclude plaintiff suffered a "non-de minimis" injury even when plaintiff sustained bruising); *McCormick v. City of Lawrence*, 325 F. Supp. 1191, 1205 (10th Cir. 2004) (finding no excessive force where plaintiff claimed his handcuffs were too tight and officer unnecessarily thrust down on them when plaintiff was resisting arrest).

also testified that the Taser broke and therefore did not puncture his skin.  No facts demonstrate that Plaintiff's ear injury occurred during his encounter with the officers, and in fact, Plaintiff himself does not know how that injury occurred.  Plaintiff promptly received care for his ear injury, and a CT scan to screen for a concussion within an hour of officers' dispatch to the scene and sustained no lasting complications.  No facts support Plaintiff's claim of injury to his head, back, ribs, or larynx as a result of this encounter.  The only injury to Plaintiff's legs supported by the record is scrapes on his knees.  Finally, the officers never kicked or punched Plaintiff, nor did they use additional force to harm Plaintiff once he was held down and under control.

Plaintiff makes no argument to support a constitutional violation other than stating that one occurred.  Although he references an incident in January of 2017 in which he argues his rights were violated, that is not a matter now before the Court.  Accordingly, because the officers' use of force was limited to that reasonably necessary to detain Plaintiff and because Plaintiff suffered no significant injury, the Court finds no Fourth Amendment violation occurred.

### b.    Malicious Prosecution and False Arrest

Next, the Court construes Plaintiff's allegations of perjury, slander, libel, and defamation as a claim for violation of his Fourteenth Amendment right to be free from malicious prosecution and/or of his Fourth Amendment right to be free from false arrest.

To establish a malicious prosecution claim under § 1983, the plaintiff initially must show "(1) that defendant[s] initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant[s] in doing so acted without probable cause; (3) that defendant[s] must

have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages."[60]

An arrestee can assert a claim under § 1983 for false arrest by pleading the common-law elements of the claim.[61]  Under Kansas law:

> One seeking to recover for false arrest or false imprisonment must prove that he was unlawfully caused to be arrested by the defendants, and, though it is not necessary that the arrest was directly ordered by the defendants, it must appear that they either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it.[62]

Critically, an unlawful arrest occurs under Kansas law when there is no probable cause to support the arrest.[63]

Thus, both malicious prosecution and false arrest claims require a showing of lack of probable cause.[64]  Plaintiff's conviction following the events underlying this case conclusively establishes probable cause for his arrest and detention.[65]  That probable cause is established precludes Plaintiff from making a prima facie case of malicious prosecution or false arrest, and Plaintiff can therefore show no constitutional violation.  Plaintiff's claims for malicious prosecution and false arrest are, accordingly, dismissed.

---

[60] *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994) (citing *Nelson v. Miller*, 607 P.2d 438, 443 (Kan. 1980)).

[61] *Turner v. Delaney*, No. 10-2533-JWL, 2015 WL 4066637, at *5 (D. Kan. July 2, 2015) (citing *Taylor v. Meacham*, 82 F. 3d 1556, 1561 (10th Cir. 1996)).

[62] *Thompson v. Gen. Fin. Co.*, 468 P.2d 269, 280 (Kan. 1970).

[63] *Id.*

[64] "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).

[65] *See Jackson v. Loftis*, 189 F. App'x. 775, 780 n.3 (10th Cir. 2006) ("[A] conviction, by plea or trial, that establishes probable cause for arrest . . . is conclusive on the issue in later civil rights litigation.") (citation omitted)).

###### c.      Failure to Provide Medical Treatment

Finally, the Court construes Plaintiff's claim of deliberate indifference as failure to provide medical treatment in violation of the Fourteenth Amendment.  Specifically, the Court construes Plaintiff's claim as alleging that a constitutional violation occurred when officers took him to the jail prior to taking him to the hospital.  Plaintiff argues that following his arrest, Sinclair did not finish checking him for injuries at the scene and that his "ear was hanging off and [the officers] should have taken him to the hospital."[66]

The Fourteenth Amendment Due Process Clause provides for the same degree of medical attention to pretrial detainees as the Eighth Amendment provides for inmates.[67]  The Tenth Circuit has stated:

> [W]e conclude that in this circuit a prisoner, whether he be an
> inmate in a penal institution after conviction or a pre-trial detainee
> in a county jail, does not have a claim against his custodian for
> failure to provide adequate medical attention unless the custodian
> knows of the risk involved, and is "deliberately indifferent"
> thereto.[68]

Deliberate indifference is a higher standard than either simple negligence or heightened negligence, and has both objective and subjective components.[69]  "The objective prong concerns the severity of a plaintiff's need for medical care; the subjective prong concerns the defendant's

---

[66] Doc. 1-1 at 2; *see also* Doc. 42 at 4.

[67] *Barrie v. Grand Cty.*, 119 F.3d 862, 869 (10th Cir. 1997) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992)).  The Supreme Court has found a pretrial detainee is one who "has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'"  *Bell v. Wolfish*, 441 U.S. 520, 536 (U.S. 1979).  The Tenth Circuit, however, has applied the same standard to arrestees in the context of failure to provide medical care claims under the Fourteenth Amendment.  *See, e.g., McCowan v. Morales*, 945 F.3d 1276, 1290 (10th Cir. 2019); *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017); *Childress v. Harms*, 449 F. App'x 758, 760 (10th Cir. 2011).

[68] *Barrie*, 119 F.3d at 869.

[69] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407–10 (1997).

state of mind."[70]  "A medical need is considered sufficiently serious to satisfy the objective

prong if the condition 'has been diagnosed by a physician as mandating treatment or is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[71]

The subjective component of the deliberate indifference standard requires that the official "be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."[72]  Even if the defendant lacks actual knowledge of

substantial risk of harm, "a factfinder may conclude that a prison official knew of a substantial

risk from the very fact that the risk was obvious."[73]  "[I]f a risk is obvious so that a reasonable

man would realize it, we might well infer that [the defendant] did in fact realize it."[74]  The Tenth

Circuit finds "deliberate indifference when jail officials confronted with serious symptoms [take]

no action to treat them."[75]

Here, Plaintiff's allegation that Defendants failed to provide him medical care does not

rise to the level of a constitutional violation.  Defendants were not indifferent to Plaintiff's

injuries because Plaintiff promptly began receiving medical treatment less than forty minutes

after his arrest.  The call for service at the residence occurred at 7:00 a.m., Plaintiff arrived at jail

at approximately 7:30 a.m., and he was taken to the hospital between 7:35 and 7:40 a.m.

---

[70] *Rife*, 854 F.3d at 647 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

[71] *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

[72] *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[73] *Farmer*, 511 U.S. at 842.

[74] *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

[75] *Burke v. Regalado*, 935 F.3d 960, 993 (10th Cir. 2019) "[F]or example, a jail employee refused to drive an inmate experiencing severe chest pain to the hospital.  He instead offered the inmate an antacid."  *Id.* (citing *Sealock*, 218 F.3d at 1210) (internal citations omitted)).

Before Plaintiff arrived at the jail, none of the officers named as defendants were aware of facts from which a substantial risk of harm could be inferred, nor was there an obvious risk of harm.  Officers Sinclair, Page, Moore, Stout, and Bush did not see an injury to Plaintiff's ear prior to his arrival at the jail.  Sinclair tried to screen Plaintiff for injuries prior to his departure for the jail, but was interrupted by Plaintiff's attempted escape; the injury check resumed once Plaintiff was being booked into jail and Plaintiff was then promptly taken to the hospital.

Further, officers did not have reason to know of Plaintiff's injuries at the scene.  Officers Page, Moore, and Bush were not aware of an injury to Plaintiff's ear because of early-morning darkness and the fact that they were not physically close to Plaintiff to observe such an injury.  Although Stout and Sinclair were in close physical contact with Plaintiff while they held him down, they were not in a position to observe an ear injury while trying to control Plaintiff to prevent him from escaping custody.  There was also no active bleeding from Plaintiff's ear to alert officers to an injury; the blood on his ear was dried and not actively bleeding, and there was no blood on his face, shirt, or in the patrol vehicle that transported Plaintiff to the jail.  Further, Plaintiff never complained of any injury to his ear to alert the officers to it, nor does Plaintiff know how the injury occurred.  Plaintiff also never complained of injury to his head, back, ribs, legs, or larynx that he listed in his Complaint; he only complained of scrapes to his knees and wrist pain.

Thomas only became aware of Plaintiff's ear injury when he saw Plaintiff—for the first time that day—at the jail.  Thomas noticed the injury when he saw Plaintiff coming into the jail and was directed to accompany Plaintiff to the hospital.  At the hospital, Plaintiff received 50-70

stitches in his ear to address what Thomas described as a "pretty deep scratch"[76] without any active bleeding.  Plaintiff also received pain medication for the sutures and a CT scan to screen for a possible concussion.

To the extent Plaintiff argues that there was a delay in care because he was brought to the jail before the hospital, this delay does not constitute a constitutional violation because he cannot show that it "resulted in substantial harm."[77]  "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain,"[78] but here there is no dispute of fact that Plaintiff suffers no further complications.  Even if some degree of delay between 7:00 a.m. and 7:40 a.m. occurred, it does not amount to a constitutional violation.

## 2.    Claims Against the City of Atchison

The lack of an underlying constitutional violation precludes Plaintiff's claims not only against the officers in their official and individual capacities, but also any claims against the City of Atchison under *Monell v. Department of Social Services of the City of New York*.[79]  A *Monell* claim seeks to impose municipal or local government entity liability under § 1983.[80] Municipalities and other local governments may be sued under § 1983 for constitutional torts where the government "*itself* violates federal law, or directs an employee to do so."[81]  However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees

---

[76] Trial Tr., Doc. 36-2 at 325:21–22.

[77] *Garrett*, 254 F.3d at 950 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

[78] *Id.* (citing *Oxendine*, 241 F.3d at 1278).

[79] 436 U.S. 658 (1978).

[80] *Id.* at 690–91.

[81] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404–05 (1997); *see Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F. 3d 1313, 1316 (10th Cir. 1998).

or agents" under a theory of *respondeat superior*.[82]  A plaintiff must establish that the
municipality has a policy or custom that directly caused the deprivation of rights.[83]  An informal
practice or custom must be "so widespread as to have the force of law" to give rise to municipal
liability.[84]  Further, the Tenth Circuit has held that the practice or custom must be "closely
related to the violation of the plaintiff's federally protected right."[85]  Critically, "[a] municipality
may not be held liable where there was no underlying constitutional violation by any of its
officers."[86]

Here, the lack of a constitutional violation by officers of the Atchison Police Department
discussed above precludes a finding of liability against the City of Atchison.  Moreover, even if
Plaintiff could show a constitutional violation, his general allegation of corruption, statement that
"[t]he City of Atchison has failed to properly train and supervise these employees," and
argument that the Atchison Police Department is a "subordinate"[87] of the City of Atchison are,
without more, insufficient to show a widespread practice or custom that is violative of federal
law.  The Court may not provide additional factual allegations "to round out a plaintiff's

---

[82] *Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

[83] *Id.*; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

[84] *Brown*, 520 U.S. at 403−04 (citing *Monell*, 436 U.S. at 690–691); *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (explaining that a "well-settled custom or practice" may be deemed an official policy or custom for § 1983 municipal-liability purposes).

[85] *Schneider*, 717 F.3d at 770.

[86] *Hinton*, 997 F.2d at 782; *see Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("When a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation— i.e., the first step of the qualified immunity analysis—a finding of qualified immunity *does* preclude the imposition of municipal liability.").

[87] Doc. 42 at 5.

complaint or construct a legal theory on plaintiff's behalf."[88]   Accordingly, to the extent Plaintiff makes claims against the City of Atchison, they are dismissed.

### C.      State-Law Claims

To the extent that Plaintiff alleges state-law claims, Defendants argue that he has not complied with the notice requirements of K.S.A. § 12-105b(d), which require a person having a claim under the Kansas Tort Claims Act to file written notice with the clerk of the governing body of the municipality before filing suit.  Because the Court grants summary judgment to Defendants on Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over any remaining state-law claims Plaintiff asserts.

Whether to exercise supplemental jurisdiction is committed to the Court's sound discretion.[89]  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[90]  Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[91]  "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplemented state claims after dismissing all federal questions.'"[92]  "If, however, the

---

[88] *Schneider*, 717 F3d at 770.

[89] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[90] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld Cty. Commr's*, 365 F.3d 855 (10th Cir. 2004).

[91] *Ball v. Renneri,* 54 F.3d 664, 669 (10th Cir. 1995).

[92] *Villalpando ex rel. Villalpando v. Denver Health and Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 (F.3d 1263, 1273 (10th Cir. 2002)).

parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims after all federal claims are dismissed.'"[93]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[94]  The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[95]

It is unclear whether Plaintiff makes claims under state law.  To the extent he does, however, there is no compelling reason for the Court to retain jurisdiction over any state-law claims after dismissing Plaintiff's § 1983 claims.  Furthermore, neither party addressed the merits of potential state-law claims in their briefs.  Accordingly, to the extent Plaintiff makes state-law tort claims, they are dismissed without prejudice.

## IV.  Conclusion

In sum, the Court grants summary judgment in favor of Defendants on Plaintiff's federal claims because the Atchison Police Department is not amenable to suit, there is no genuine issue of material fact as to any of Plaintiff's claims under § 1983, and there is no basis for *Monell* liability to support a claim against the City of Atchison.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and to the extent that he asserts any such claims, they are dismissed without prejudice.  Finally, the Court denies Defendants' motion to file a sur-sur-reply because it does not consider Plaintiff's sur-reply filed without leave of Court.

---

[93] *Id.*

[94] *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[95] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

26

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 36) is **granted** as to Plaintiff's federal § 1983 claims.  To the extent that Plaintiff asserts state-law claims, they are **dismissed without prejudice**.  Defendants' Motion for Leave to File Sur-sur-reply (Doc. 45) is **denied**.

**IT IS SO ORDERED.**

Dated: June 5, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
